**Dorothy Jean RAY, Plaintiff-Appellant,**

v.

**S. David FREEMAN, Aubrey J. Wagner and William L. Jenkins, Defendants-Appellees.**

No. 78–3746.

United States Court of Appeals, Fifth Circuit.

Sept. 25, 1980.

Rehearing Denied Oct. 22, 1980.

Donald W. Davis, Birmingham, Ala., for plaintiff-appellant.

Herbert S. Sanger, Jr., Gen. Counsel, Justin M. Schwamm, Sr., Asst. Gen. Counsel, James E. Fox, Asst. Gen. Counsel, Thomas F. Fine, Tennessee Valley Authority, Division of Law, Knoxville, Tenn., for defendants-appellees.

Before RUBIN and POLITZ, Circuit Judges, and POINTER,* District Judge.

POLITZ, Circuit Judge:

Dorothy Jean Ray appeals adverse rulings on a motion for partial summary judgment, and on the merits after a bench trial, of her Title VII claims, 42 U.S.C. § 2000e, et seq. We affirm.

Ray received a Bachelor of Science degree in chemistry from Georgia Institute of Technology in 1965. During college she worked summers and part time as a chemistry undergraduate research assistant. Following her graduation, Ray worked as a chemist for approximately one year; she left that position in January 1967 due to a move occasioned by the hiring of her husband as a Tennessee Valley Authority (TVA) chemist in Muscle Shoals, Alabama.

On June 19, 1973, after having been out of the work force for 6½ years, Ray filed an employment application with the TVA's Muscle Shoals Area Employment Office and requested a professional chemist's position. No second choice was listed on the form. Based on her academic credentials, prior employment and stated preference, she was classified as an applicant for a "1520 Chemist Jr. Grad" SD–1 or SD–2 level professional position.

Job interviews were granted to applicants on request; job classifications were dis-

---

* District Judge of the Northern District of Alabama, sitting by designation.

cussed at that time. Ray did not avail herself of this opportunity, nor did she request any information about the job application or communicate with the employment office until January 10, 1974. On that date, she notified the office that she would also accept a subprofessional job at the SE-level. Her application was re-classified. She was hired at the SE-level on February 17, 1976 and promoted to the SD-level in August 1977.

Dissatisfied with the TVA's handling of her job application, Ray filed an Equal Employment Opportunity complaint on February 8, 1974, which she revised and refiled on February 20, 1974, alleging that she was the victim of sex discrimination and a target of TVA reprisals because her husband had challenged his dismissal from the TVA. Following a full administrative investigation and hearing, Ray's complaints were dismissed. On review, the Civil Service Commission (CSC) Appeals Review Board affirmed. The instant suit was filed on January 19, 1976.

Ray complains that in the eight months between her initial job application and the filing of the revised EEO complaint, three white males were hired to SD-level jobs at Muscle Shoals. Moreover, she charges that when she first applied for a job in 1973, no females were employed as professional chemists at the Muscle Shoals facility despite the fact that in 1971–1972 and 1972–1973, 18% of those graduating with Bachelor of Science degrees in chemistry from the accredited colleges and universities were female. To reinforce her sex discrimination charge, Ray points out that a male was hired to an SE-level position between January 10, 1974, the date she amended her application to request such employment, and February 20, 1974, the date of her revised EEO complaint. Her petition claims that discriminatory hiring practices continued until she was hired, and that the TVA's failure to hire her was a part of its retaliation for her husband's formal resistance to his termination.

In granting the defendant-appellees'[1] motion for partial summary judgment, the district court rejected that portion of the complaint predicated on the retaliation charge. In addition, all charges of sex discrimination allegedly occurring after February 20, 1974, were dismissed.

At the bench trial *de novo*, the district judge modified his earlier ruling and permitted introduction of evidence tending to show discrimination in the form of the alleged reprisal, between July 24, 1973, and February 20, 1974. The trial focused on acts of sex discrimination alleged to have occurred prior to February 20, 1974. Both the sex discrimination and retaliation charges made by petitioner were rejected.[2]

In addressing the Title VII sex discrimination charge, the court found that three persons were hired at the SD-level after Ray applied for a job. All had participated in a student cooperative program involving the TVA and Florence State University (now University of North Alabama). Under this co-op program, students alternately attended the university and worked at the Muscle Shoals facility. In addition to regular class studies, the co-op students received extensive on-the-job training by TVA chemists, became familiar with TVA operations, and had their performance evaluated by TVA supervisors. Nearly 50% of the co-op students were female. During the period in question, one of the female co-op participants was offered employment which she declined in order to pursue graduate studies at Vanderbilt University.

Jobs were offered to co-op students under the TVA's "Open Register" plan which established a hierarchy of hiring preference. Applicants were classified and considered for employment in the following order:
1. cooperative program graduates/recent college graduates;

**1.** As reflected by the style of these proceedings, the complaint named a number of TVA employees as defendants. The action as against them was dismissed on motion and there is no appeal from that judgment.

**2.** Ray does not urge the retaliation charge on appeal.

2. straight-line promotions;
3. employee bidding;
4. other candidates not recruited directly from college.

Under this plan, participants in the cooperative student program were given the highest priority. The district court found this preference to be reasonably grounded. These applicants were recent college graduates, exposed, at least in theory, to the most recent developments in the field of chemistry. Furthermore, they had actual experience working for the TVA and their performances had been evaluated by TVA supervisors. The co-op students hired, as well as the female who declined employment to pursue further studies, all were accorded priority over Ray, who fell into the least preferred category. The district court found that hiring the three males from the co-op program for the SD-level slots was not discriminatory.

The district court examined Ray's charge that a male was improperly awarded an SE-level position in the Ammonia Branch after she indicated that she would accept an SE-level job. Finding that the male employed had previously worked for TVA, was experienced and capable of performing all tasks of the particular job without training, that there was a need for someone who could immediately perform all duties and that he had a veteran's preference, the court held that the hiring was not discriminatory.

On appeal, Ray challenges the district court's refusal to entertain complaints of discrimination occurring after February 20, 1974, and its conclusion that the hiring practices followed were nondiscriminatory.

### Post EEO Complaint Claims

■ The district court concluded that it could not entertain complaints which had not been previously considered within the administrative review process. We agree. Compliance with the administrative review apparatus provided by Title VII is a requisite for judicial review of a discrimination claim. *Brown v. GSA*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); *Hoffman v. Boeing*, 596 F.2d 683 (5th Cir. 1979). The district court could properly consider all claims which had been the subject of the CSC hearing. However, Ray also alleged discrete acts of discrimination occurring subsequent to the filing of her February 20, 1974, revised administrative complaint. The district court appropriately declined to consider these charges as other than corroborative evidence.[3]

By alleging post-February 1974 acts of discrimination for the first time in her complaint to the district court, Ray would circumvent the entire administrative enforcement mechanism. It would be particularly inappropriate to allow such a bypass of the administrative process in suits involving federal agencies. To permit Ray to seek judicial relief without first affording the federal-agency employer an opportunity to remedy discriminatory practices administratively would undermine "the crucial administrative role that each agency together with the Civil Service Commission was given by Congress in the eradication of employment discrimination." *Brown v. GSA*, 425 U.S. at 833, 96 S.Ct. at 1968. We hold that Ray may not secure judicial review of these claims without prior administrative consideration. Discrete acts of discrimination which occur after the filing of an EEO complaint must first be reviewed administratively before such acts may serve as the basis for a finding of discriminatory conduct justifying remedial action by the court. Ray had previously amended and revised her EEO complaint. She could have filed another administrative complaint attacking post-February 1974 employment decisions; she did not do so despite admonitions to her during the administrative process that such matters could not be considered under her then pending complaint.

■ The foregoing is not to be taken as a requirement that allegations in judicial

---

3. The district court properly allowed evidence offered to show post-February 1974 discriminatory acts, introduced to support or corroborate charges of pre-February 1974 discrimination. The court was not impressed or persuaded by such evidence.

complaints must be the mirror image of earlier EEO filings. Nor do we suggest the barring of evidence that demonstrates post-EEO complaint discrimination. Subsequent acts may indeed be the proper subject of pleading and proof. As long as allegations in the judicial complaint and proof are "reasonably related" to charges in the administrative filing and "no material differences" between them exist, the court will entertain them. *Danner v. Phillips Petroleum Co.,* 447 F.2d 159 (5th Cir. 1971); *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455 (5th Cir. 1970). As we have noted in *Sanchez* at 466:

> . . . the "scope" of the judicial complaint is limited to the "scope" of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.

Judicial claims which serve to amplify, clarify, or more clearly focus earlier EEO complaints are appropriate. Allegations of new acts of discrimination, offered as the essential basis for the requested judicial review, are not appropriate. *See Danner,* 447 F.2d at 163 n. 3.

Ray's post-February 20, 1974 judicial complaints were properly dismissed by the trial court because they would have required the court to initially adjudicate new claims of discrimination. Entertaining this facet of Ray's lawsuit would have served to thwart the "rigorous administrative exhaustion requirements" mandated by Title VII. *Brown,* 425 U.S. at 833, 96 S.Ct. at 1968.

### Sex Discrimination Claims

■ Ray's assertion that she has been the victim of sex discrimination is based entirely on the TVA's hiring of four males. On August 6, 1973, three male co-op participants were hired to fill SD-level jobs at Muscle Shoals. An SE-level job was filled by a male on February 5, 1974. Ray contends that employment of these men subjected her to "disparate treatment" which is expressly prohibited.[4] *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). Under *McDonnell Douglas,* to establish a prima facie case of disparate treatment, Ray must prove: (1) that she belongs to a group protected by Title VII, (2) that she sought and was qualified for a job for which the employer was accepting applicants, (3) that despite her qualifications she was rejected, and (4) that after her rejection the position remained open and the employer continued to seek applicants among persons having plaintiff's qualifications.

■ Once the plaintiff establishes a prima facie case, the defendant is entitled to refute it by articulating a legitimate, nondiscriminatory reason for the hiring decision. *Jefferies v. Harris Cty. Community Action Ass'n.,* 615 F.2d 1025 (5th Cir. 1980). Defendants must prove nondiscriminatory reasons by a preponderance of the evidence. *Burdine v. Texas Dept. of Community Affairs,* 608 F.2d 563 (5th Cir. 1979); *Turner v. Texas Instruments,* 555 F.2d 1251 (5th Cir. 1977).

Adequate rebuttal of the plaintiff's prima facie case does not automatically foreclose a finding of defendant's liability; plaintiffs are given a fair opportunity to show that the explanation supplied by the employer is in fact a pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 792, 93 S.Ct. at 1817; *Jefferies,* 615 F.2d at 1030.

■ It would appear that Ray met her initial burden of establishing a prima facie case. She is protected by Title VII, applied for an SD or SE-level chemist's job for

---

4. Ray apparently also contends that the "Open Register" hiring plan constitutes a facially neutral hiring policy which is prohibited because it operates to impermissibly exclude women, i. e., a claim of disparate impact. *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). We do not agree. Approximately 50% of the co-op participants were female. By Ray's own reckoning 18% of all current graduate chemists are female. The plan has not been shown to have a disparate impact on women.

which she was qualified,[5] was rejected and while her application was on file, males were hired to fill the SD and SE-level jobs. However, the defendants shouldered their burden and rebutted Ray's prima facie case. The evidence shows that all males hired for SD-level jobs had participated in the co-op program. The co-op program is not discriminatory in theory or practice. Any qualified student, regardless of sex, may participate in that program. Had she not decided to pursue graduate studies, one female participant would have been hired as an SD-level employee. Giving a preference to participants in the co-op program is not discriminatory. As we have noted above, valid reasons supported the hiring preference given co-op students. Their formal education was very current and their practical experience in the form of on-the-job training was obviously invaluable.

By contrast, Ray had been out of the work force for 6½ years when she applied for an SD-level job. Nothing on her application reflected efforts to remain current on new developments in the field of chemistry. She had not worked at Muscle Shoals and was not familiar with the operation. Additionally, TVA supervisors had no first-hand knowledge of her capabilities.

When the TVA hired the male for an SE-level chemist's job in the Ammonia Branch, they needed an employee who could immediately fill the position. The male hired met their needs for he had previously performed that job and his capabilities were well known. Assuming that Ray established a prima facie case, the TVA more than adequately rebutted it by proving that its decision was based on the superior qualifications of the person selected.

Finally, the record reflects no credible evidence that the reasons articulated by the

TVA for its hiring decisions were merely pretexts to cover sex discrimination.

The matter stands AFFIRMED.

---

5. The district court noted that, "it is possible to conclude that these positions would not have even been established but for the fact that [the] TVA felt some obligation to offer such a position to students who successfully completed the student Co-op program and sought permanent employment. And, except for those three positions, no other *professional* position for which plaintiff was qualified became available during the entire period [from] June 19, 1973 to February 20, 1974." The second element of the prima facie case requires that the complainant apply and be qualified for *a job for which the employer was seeking applicants.* In view of this requirement one may question whether Ray carried her initial burden.