Kenneth BUZZI, et al., Plaintiffs,

v.

Lieutenant Ricardo GOMEZ,
individually, et al.,
Defendants.

Nos. 96–3492–CIV., 98–0371–CIV.

United States District Court,
S.D. Florida.

Feb. 12, 1999.

■■■■■■■■■■■■■■■■■■■■■■■■

David Alan Chonin, Sher & Navarrete, P.A., Coral Gables, FL, for plaintiffs.

Thomas A. Tucker Ronzetti, Assistant County Attorney, Miami, FL, for defendants.

***ORDER GRANTING MIAMI–DADE COUNTY'S MOTION FOR SUMMARY JUDGMENT ON THE CLAIMS OF RICARDO GOMEZ***

GOLD, District Judge.

THIS CAUSE is before the Court upon Defendant Miami–Dade County's Motion for Summary Judgment on the Claims of Ricardo Gomez [D.E. # 41].[1] Plaintiff,

Lieutenant Ricardo Gomez, has sued Miami–Dade County's violations of Title VII, 42 U.S.C. § 2000e, *et seq.,* and 42 U.S.C. § 1983.

As all claims arise under federal law, this Court has jurisdiction pursuant to 28 U.S.C. § 1331. Additionally, 28 U.S.C. § 1343(4) invokes the original jurisdiction of the Court over all claims predicated on violations of civil rights.

The County, sued for national origin discrimination and retaliation, has moved for summary judgment. The County asserts four bases which it claims support the propriety of summary judgment in its favor: (1) the allegations in Gomez's complaint exceed the scope of his Charge of Discrimination filed with the Equal Employment Opportunity Commission (the "EEOC"); (2) Gomez has not established a prima facie case of retaliation; (3) the County had legitimate, nondiscriminatory reasons for its employment decisions; and (4) because Gomez has not shown the existence of an illegal custom or policy, the § 1983 claim against the County should be dismissed.

After carefully considering the parties' arguments, the relevant case law, and the record as a whole, the Court concludes that the County has presented meritorious arguments on the dispositive issues. Based upon the County's compelling reasons, as well as additional principles governing employer and municipal liability under Title VII and § 1983, the Court concludes that Gomez's claims cannot survive summary judgment.

## I. Factual and Procedural Background

Plaintiff Ricardo Gomez's claims arise out of his employment with the County as

---

1. On August 24, 1998, an Order entered consolidating this case with Case No. 96–3492–CIV–GOLD for all purposes pursuant to Rule 42 of the Federal Civil Procedure. However, the Clerk of Court was directed to keep separate and complete records of both causes. Therefore, this motion was also filed in Case No. 96–3492–CIV–GOLD as Docket Entry No. 182. Accordingly, this order shall dispose of Docket Entry No. 41 in Case No. 98–371–CIV–GOLD and the corresponding entry [D.E. # 182] in Case No. 96–3492–CIV–GOLD.

a police officer in the Miami–Dade Police Department ("MDPD"). This action was initiated by the filing of a Complaint on February 20, 1998, which was amended on March 9, 1998. Although the Amended Complaint does not set forth identifiable counts, it purports to allege claims of national origin discrimination and retaliation in violation of Title VII and § 1983. Gomez claims that, as a result of discrimination and retaliation perpetrated by the County, he was denied meritorious promotions and training opportunities.

Gomez's employment history reflects that he was hired as a police officer of the MDPD in 1981. Throughout his employment with the County, Gomez received several promotions. Ultimately, he was promoted to the rank of Lieutenant in 1992. In January 1994, Gomez was appointed as the head of the General Investigations Unit (GUI) at the Airport District.

From the inception of his assignment to the Airport District, several officers perceived that Gomez based his employment decisions on unlawful criteria. These officers believed that Gomez was repeatedly harassing non-Cuban officers for the purpose of coercing or effectuating their transfers out of the GUI in order to create vacancies for Cuban officers. The harassing treatment reached such intolerable levels that, as a result of complaints submitted to Gomez's superiors, the MDPD's Professional Compliance Bureau ("PCB"), the division responsible for investigating improper conduct within the MDPD, commenced a formal investigation in June 1995. Gomez was reassigned to another unit during the pendency of the investigation.

The PCB investigation focused on seventeen allegations of discrimination and improprieties committed by Gomez against these officers, including ethnic slurs and blatant abuses of power. Upon its conclusion, the PCB issued written findings. The PCB Disposition Memorandum sustained several of the serious allegations, and found that Gomez had acted unprofessionally in carrying out his supervisory responsibilities. Although the PCB did not find sufficient evidence that discrimination motivated Gomez's actions, the PCB explicitly concluded that Gomez's failure to follow published procedures for personnel decisions, and the actual decisions made by Gomez, raised concerns about the bases for his decisions, "fostered the perception of discrimination," and "creat[ed] an environment . . . that was hostile." [2]

In addition to instituting the MDPD internal investigation, several of the offended officers filed a federal civil rights action against the County, Gomez, and the Assistant Director of Police Services, Carlos Alvarez ("Alvarez"). Alvarez, now the Director of Police Services, was dismissed from that suit on the basis of qualified immunity. However, the County remains exposed to liability for, at least, Gomez's allegedly unlawful conduct.

Notwithstanding the seriousness of the discrimination charges and the PCB's suspicions regarding Gomez's supervisory abilities, Gomez believed his tenure and service in the MDPD entitled him to a promotion. He applied for and actively pursued the rank of Captain. Following the selection phases, Gomez placed sixth on the Captain's eligibility list. Accordingly, he could not be considered for promotion until the candidates who placed above him on the list received their promotions. However, when Gomez became the top candidate, after the five higher ranked officers were promoted, Gomez was

---

**2.** Gomez claims that the Disposition of the PCB was overturned, thereby exonerating Gomez from his subordinate officers' charges. However, a review of the Hearing Examiner's Decision belies Gomez's assertion. According to the Decision, only the disciplinary suspension imposed against Go-

mez was reversed. The Hearing Examiner did not disturb the PCB's findings of Gomez's unprofessional supervisory conduct. In fact, the Examiner concluded that Gomez "exercised poor judgment in his selection of terminology to influence employee behavior," and that his methods were "unorthodox."

passed over. Instead, promotions were extended to candidates who ranked below him on the eligibility list.

Prior to denying Gomez's promotion to Captain and training opportunities in 1997, Gomez filed a Charge of Discrimination with the EEOC. This Charge, filed July 27, 1995, was based solely on allegations of national origin discrimination. Gomez charged that, as a Hispanic, he was harassed and transferred "upon the filing of a Charge of Discrimination against [Gomez]." Gomez further charged that others who had been accused of discrimination, had not received "disciplinary transfers" pending PCB investigations. Gomez did not include the national origins of these other officers.

Prior to filing his EEOC Charge, Gomez attempted conciliation through the County's grievance process. In his grievance form, dated June 29, 1995, Gomez alleged that his transfer violated the Collective Bargaining Agreement (the "Agreement") between the County and the Police Benevolent Association. Specifically, Gomez's grievance was based on Article 36 of the Agreement, which prohibits the use of transfers as a disciplinary measure. Gomez neither mentioned nor inferred that the transfer was based on his national origin.[3]

Several years passed between the time Gomez filed his EEOC Charge and the issuance of the EEOC's Right to Sue Notice on November 23, 1997. During this period, Gomez claims that he was subjected to several additional acts of discrimination. However, he never supplemented his EEOC Charge. Pursuant to the EEOC's Notice, Gomez filed his civil complaint.

## II. Standard for Summary Judgment

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the Court is authorized to grant a party's summary judgment where the pleadings and supporting materials demonstrate there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue of fact is "material" if it is a legal element of a claim under the applicable substantive law and one which might *affect* the outcome of the suit under the governing law. *Id.* A material fact is "genuine" if "the record taken as a whole could lead a rational trier of fact to find for the non-moving party." *Id.*

In order to defeat a defendant's properly supported motion for summary judgment, a plaintiff must make an affirmative presentation of specific facts showing a genuine issue, and may not merely rely on the general allegations of the pleadings. *Id.* A mere scintilla of evidence is insufficient to defeat a motion for summary judgment:

> [I]n every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.

*Id.* at 251, 106 S.Ct. at 2511. Courts reviewing a motion for summary judgment focus on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.,* 121 F.3d

---

**3.** Gomez's grievance was denied for failure to comply with time limitations imposed by the terms of the Agreement. Gomez exercised his right to appeal the decision, and requested a meeting with Alvarez. Although an appeal must be in writing and presented within ten days of the grievance committee's decision, Gomez states that he did not meet with Alvarez until May 17, 1997—almost three years later. Moreover, according to Gomez, they only discussed the MDPD's reasons for denying Gomez's promotion to Captain. Gomez's "appeal" was not only untimely, his meeting with Alvarez had nothing to do with this grievance, which was predicated on an improper transfer.

642, 646 (11th Cir.1997) (quoting *Anderson, supra* ).

The Supreme Court has established a two-prong framework of shifting burdens which must be employed by federal courts in determining whether there exists a genuine issue precluding summary judgment. This framework places the initial burden on the moving party to establish the absence of a genuine issue as to any material fact. *Allen,* 121 F.3d at 646 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)). The moving party may discharge this burden by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). In deciding whether the burden has been satisfied, the Court must view the evidence and all reasonable inferences arising from it in the light most favorable to the nonmoving party. *Allen,* 121 F.3d at 646.

Once the movant has satisfied its burden, the burden shifts to the nonmoving party to present evidence sufficient to make a "showing that the jury could reasonably find for that party." *Id.* Facts asserted by the party opposing a summary judgment must be regarded as true if supported by affidavit or other evidentiary material. *Coke v. General Adjustment Bureau, Inc.,* 640 F.2d 584, 595 (5th Cir. 1981). However, where the nonmoving party bears the burden of proving an element essential to that party's case, summary judgment is warranted when the party fails to make a showing sufficient to establish the essential element. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Eleventh Circuit commented on the nonmovant's burden:

For issues on which the non-movant would bear the burden of proof at trial, the means of rebuttal available to the non-movant vary depending on whether the movant put on evidence affirmatively negating the material fact or instead demonstrating an absence of evidence on the issue. Where the movant did the former, then the non-movant must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated. Where the movant did the latter, the non-movant must respond in one of two ways. First, he or she may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was "overlooked or ignored" by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence. *Celotex,* 477 U.S. at 332, 106 S.Ct. at 2557 (Brennan, J., dissenting). Second, he or she may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.

*Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1116–17 (11th Cir.1993).

Merely establishing a prima facie case of discrimination does not foreclose the possibility of summary judgment in favor of the employer. *See Young v. General Foods Corp.,* 840 F.2d 825, 828 (11th Cir.1988). Presentation of a prima facie case creates a rebuttable presumption of discrimination, but does not alone establish a genuine issue of material fact sufficient to go to the jury. *See id.* at 829. Since it is Gomez's burden to establish pretext, he "must present 'significantly probative' evidence on the issue to avoid summary judgment." *Id.*

## III. Discussion and Analysis

The Amended Complaint infers that Gomez was the victim of two types of conduct proscribed by Title VII and § 1983: national origin discrimination and retaliation. Accordingly, the viability of Gomez's

claims must be analyzed pursuant to these statutes.

### A. Plaintiff's Claims of Discrimination Under Title VII

Title VII prohibits discrimination in the hiring, discharge, and promotion of employees on the basis of race, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1). Title VII is intended to eradicate not only economic and tangible discrimination, but the entire spectrum of disparate treatment. *See Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993); *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986). This includes more than " 'terms' and 'conditions' in the narrow contractual sense." *Id.*

█ It is clear, however, that not all employment practices are actionable under Title VII. The demanding standards for judging discriminatory working environments were designed to prevent Title VII from becoming a "general civility code." *Onçale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 118 S.Ct. 998, 1003, 140 L.Ed.2d 201 (1998). Applied judiciously, these standards "filter out complaints attacking 'ordinary tribulations of the workplace.' " *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 2284, 141 L.Ed.2d 662 (1998) (quoting source omitted).

The County has proffered several reasons why Gomez's Title VII allegations should be terminated prior to trial. The County argues that several of the claims exceed the scope of Gomez's administrative filing. Additionally, Gomez cannot pursue his retaliation claim because he has failed to establish a prima facie case. Finally, Gomez has not shown that the County's legitimate, nondiscriminatory reasons for its decisions were merely pretextual acts of discrimination.

### 1. *Plaintiff's Allegations Exceed the Scope of His EEOC Charge*

The Amended Complaint identifies five actions which Gomez alleges are evidence of the County's intent to discriminate: (1) he was refused promotion to the rank of Captain; (2) he was subjected to an involuntary and retaliatory transfer; (3) he was refused promotion to First Lieutenant; (4) his request to transfer to the Hammocks District GUI was denied; and (5) he was not permitted to participate in specialized training.

The County argues that Gomez's promotion and training claims exceed the scope of his EEOC Charge. Because the EEOC Charge alleges only claims of harassment and an improper transfer, the County contends that the remaining claims of promotional and training deprivations are barred. The Court agrees. Moreover, the Court finds that all of the claims set forth in the Amended Complaint are barred.

It is well settled that administrative remedies must be exhausted before an employee may pursue a Title VII employment discrimination claim in federal court. *See Forehand v. Florida State Hosp.,* 89 F.3d 1562, 1567 (11th Cir.1996); *Ray v. Freeman,* 626 F.2d 439, 442 (5th Cir.1980) (ordinarily, the filing of an administrative charge is a jurisdictional prerequisite of a Title VII action). Administrative prerequisites serve two primary policies: (1) encouraging pre-suit conciliation; and (2) notifying the employer of discriminatory practices. *See Larkin v. Pullman–Standard Div.,* 854 F.2d 1549, 1562–66 (11th Cir.1988), *vacated on other grounds and remanded sub nom., Pullman–Standard, Inc. v. Swint,* 493 U.S. 929, 110 S.Ct. 316, 107 L.Ed.2d 307 (1989).

█ To ensure that strict compliance with filing requirements does not frustrate the remedial efficacy of Title VII, Courts have carved out certain exceptions. One exception permits courts to entertain allegations of the judicial complaint which are

"reasonably related" to those contained in the administrative charge. *See Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989). If the allegations of the subsequent complaint could have been a reasonably expected out-growth of the EEOC's investigation of the charged conduct, the omitted allegations of discrimination are deemed within the scope of the EEOC filing. *See id.* When the allegations in the federal action involve conduct committed subsequent to the filing of an EEOC charge, it is reasonably related to the charged conduct where: (1) the subsequent conduct would fall within the reasonably expected scope of the EEOC investigation of the administrative charges; (2) the claim is one alleging retaliation against the employee for filing an EEOC charge; or (3) the plaintiff alleges "further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Butts v. City of N.Y. Dep't of Hous. Preservation & Dev.*, 990 F.2d 1397, 1401 (2d Cir.1993) (citation omitted). However, "[a]llegations of new acts of discrimination, offered as the *essential* basis for the requested judicial review, are not appropriate." *Ray*, 626 F.2d at 443 (emphasis added).

■ Gomez's judicial allegations do not fall under this exception for several reasons. First, most of the acts alleged in the Amended Complaint transpired well *after* Gomez filed his July 29, 1995 Charge. For instance, Gomez did not even apply for the rank of Captain until July 1996. Additionally, his requested transfer to the Hammocks District GUI was denied in the Spring of 1997, and his specialized training opportunities did not materialize until the Summer of 1997.

■ Discrete acts of discrimination that occur subsequent to the filing of an administrative charge are not reasonably related to the charged conduct. *See Ray*, 626 F.2d at 443. To permit Gomez to seek judicial relief without first filing a Charge with the EEOC would undermine the statutory procedures crucial to Title VII's conciliatory and remedial scheme. *See id.*

Gomez's allegations of denied promotions, training, and transfer to the Hammocks District are discrete acts which occurred subsequent to Gomez's filing his EEOC Charge. Gomez has not presented any credible evidence that he attempted to amend his Charge, even though it was pending before the agency for more than two years. This failure to amend defeated the conciliatory purposes of the administrative filing. Because these claims did not receive prior administrative consideration, remedial action by the Court is not available. *See id.* at 442.

Moreover, certain acts alleged in the Amended Complaint occurred before Gomez filed his EEOC Charge in July 1995, and yet, they are not included in the Charge. These allegations concern: (1) the denied promotion to First Lieutenant, and (2) the involuntary and retaliatory transfer during the pendency of the PCB investigation. Gomez has failed to explain why this allegedly discriminatory conduct was ·not included in his Charge, and the Court finds that the allegations are not "reasonably related" to the charged conduct.

■ Gomez claims that in April 1995, he placed second on a list of candidates for promotion to First Lieutenant. This list was specifically compiled to comply with an affirmative action program to promote minority groups to supervisory positions within the MDPD. As a Hispanic, Gomez is a member of a minority who qualified for the program. Like the Captain's eligibility list, Gomez claims that he was passed over for candidates that placed lower on the First Lieutenant's eligibility list. However, at least two of these candidates were also Hispanic.[4] Furthermore, the

---

4. Significantly, Gomez claims that the third candidate on the list, a Hispanic male, also placed one position below Gomez on the Cap-

tain's eligibility list, but was promoted to the rank of Captain instead of Gomez. This severely undercuts Gomez's contention that he

County's decision could not have been retaliatory because, in April 1995, the PCB and MDPD were unaware of the allegations of harassment and hostile environment subsequently raised by Gomez's subordinate officers. Because Gomez has not shown that the County's conduct was based on national origin discrimination and that the County's failure to promote Gomez to First Lieutenant was "reasonably related" to anything alleged in his EEOC Charge, this allegation cannot survive summary judgment.

■ Gomez's allegation of an involuntary and retaliatory transfer is similarly deficient. In the Amended Complaint, Gomez claims that he was transferred during the pendency of the PCB investigation on the basis of retaliation. Yet, his EEOC Charge, which relates to the same allegedly unlawful transfer, states that the transfer was based on national origin discrimination. These divergent bases cannot be "reasonably related," and therefore, the retaliation claim was not expected to grow out of the EEOC's investigation of national origin discrimination. *See, e.g., Malarkey v. Texaco, Inc.,* 983 F.2d 1204, 1208 (2d Cir.1993) (charge premised upon discrimination must precede retaliation to be reasonably related to the charged conduct); *Owens v. New York City Hous. Auth.,* 934 F.2d 405, 410 (2d Cir.1991) (same); *Cabiness v. YKK (USA), Inc.,* 859 F.Supp. 582, 587 (M.D.Ga.1994), *aff'd,* 98 F.3d 1354 (11th Cir.1996) (plaintiff's claim of retaliation failed for lack of evidence that she engaged in protected activity prior to her employer's alleged retaliatory actions).

Consequently, Gomez's claims of denied promotion to Captain, specialized training, and transfer to the Hammocks District, which all took place after he filed his EEOC Charge, must be dismissed because they are not reasonably related to anything in his EEOC Charge. And, Gomez's claims of involuntary and retaliatory transfer, and denied promotion to First Lieutenant must be dismissed because they

was refused a promotion to Captain due to

occurred before Gomez filed his EEOC Charge, and are materially dissimilar from any discrimination alleged in his administrative filing.

Even assuming Gomez's claims are not barred for failure to exhaust administrative prerequisites, summary judgment is appropriate. Gomez's failure to establish a prima facie case is fatal to his retaliation claim. Moreover, Gomez has not shown that the County's reasons for its employment decisions concerning Gomez were pretextual.

### 2. *Plaintiff Has Not Established a Prima Facie Case of Retaliation*

Title VII forbids employers from retaliating against an employee who exercises rights conferred by the statute. *See* 42 U.S.C. § 2000e–3(a). Establishing a prima facie retaliation claim requires a showing that: (1) the employee engaged in activities protected by Title VII; (2) as a result, the employee suffered an adverse employment action; and (3) the adverse action was causally related to the employee's protected activities. *See Little v. United Technologies, Carrier Transicold Div.,* 103 F.3d 956, 959 (11th Cir.1997); *Coutu v. Martin County Bd. of County Comm'rs,* 47 F.3d 1068, 1074 (11th Cir.1995); *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 920 (11th Cir.1993). For Gomez's retaliation claim to be actionable, he must establish all three elements of a prima facie case.

To satisfy the first element of a prima facie case of retaliation, Gomez must show that he engaged in statutorily protected activity. Activities protected under Title VII's anti-retaliation provision fall into two broad categories: (1) opposing an employment practice made unlawful by Title VII (the "opposition clause"); and (2) participating in an investigation, proceeding, or hearing under Title VII (the "participation clause"). *See* 42 U.S.C. § 2000e–3(a).

national origin discrimination.

The "protected activity" in which Gomez contends he engaged was the PCB investigation, out of which EEOC charges and a federal complaint were filed against him. Gomez claims that he was denied promotional and other proprietary opportunities because of the "findings of the Internal Affairs investigation matter as well as the resulting federal lawsuit stemming from that complaint." Based on this assertion, Gomez has failed to satisfy the first element necessary to sustain a triable retaliation claim.

### a. Plaintiff Did Not Oppose an Unlawful Employment Action

■ To invoke the protection against retaliation under the opposition clause, an employee must have opposed employment acts which the employee believes in good faith to be unlawful. *See Little*, 103 F.3d at 960. Not only must the challenged conduct be objectively unreasonable, the employee must show that he subjectively believed that the employer engaged in an employment practice prohibited by Title VII. *See id.; see also Clover v. Total Systems Servs., Inc.*, 157 F.3d 824, 827 (11th Cir.1998) (an employee claiming retaliation under the opposition clause need only have a good faith, objectively reasonable belief that the employer's actions are unlawful under Title VII). The reasonableness of the employee's subjective belief as to the unlawful nature of his employer's acts is assessed in light of the totality of the circumstances. *See Little*, 103 F.3d at 960.

■ Gomez cannot show that he had a subjectively reasonable belief that he was *opposing* an unlawful employment practice. In fact, as Gomez was the subject of the investigation, he was *defending* his employment decisions against the challenges of his subordinate officers who had accused Gomez of engaging in unlawful employment practices. Because Gomez was not opposing any County employment practices which were the subject of the PCB investigation, and which subsequently evolved into administrative and judicial claims, Gomez cannot assert retaliation under the opposition clause.[5]

### b. Plaintiff Did Not Participate in Protected Activity

■ The Eleventh Circuit delineated the activities protected under the participation clause encompassed in Title VII's anti-retaliation provision. *See Clover*, 157 F.3d at 827. Pursuant to this binding law, relief under the participation clause is triggered *only* when the retaliation is incident to participation in an EEOC investigation, and is not available for complaints made to employers and participation in in–house investigations.[6] *See id.* at 829.

■ Gomez cannot state a claim under the participation clause. Although the clause protects "particpat[ion] in any manner in an investigation," the clause is clarified by requiring the investigation to be one engaged in under Title VII. *See id.* (citing 42 U.S.C. § 2000e–3(a)). Gomez has stated that the County's alleged retaliation was the result of the PCB investigation against him. Gomez's mere participation in an internal investigation conducted by the County does not consti-

**5.** This is especially true for Gomez's claims regarding the denied promotion to Captain, training opportunities, and transfer to the Hammocks District, since these events occurred after Gomez's allegedly discriminatory conduct came to light. However, because the PCB investigation took place after Gomez was transferred out of the Airport District and was denied promotion to First Lieutenant, he cannot claim that these acts of the County were predicated on Gomez's opposition to any statutorily protected rights. In other words, the fact that the unlawful conduct preceded any alleged opposition, defies the probability that Gomez reasonably believed he was opposing an unlawful employment practice.

**6.** If an employee participates in an in-house investigation of employment conduct, which the employee reasonably believes is unlawful, then the employee's remedy is provided under the opposition clause, not the participation clause. *See generally Clover*, 157 F.3d at 826–29.

tute "participation in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3(a). According to the Eleventh Circuit, this is exactly the type of in-house investigation for which Title VII's anti-retaliation provision does not provide protection. *See id.* at 829–31.

Having failed to satisfy the first element of establishing a prima facie case of retaliation, the Court need not address the sufficiency of the remaining elements. However, because there was no protectable "opposition" or "participation," the Court agrees with the County that there is also no causal link between a protected activity and the purportedly adverse employment decision.

### 3. *Plaintiff Has Not Shown that the County's Legitimate Reasons Were Pretextual*

Even if the Court were to find that Gomez established a prima facie case of retaliation, or national origin discrimination, Gomez still has not met his burden to overcome judgment as a matter of law. Under Title VII, Gomez has the initial burden of proving that the County discriminated against him on the bases of his national origin and retaliation by establishing a prima facie case which satisfies each element in the context of the challenged employment action.[7] *Carter v. Three Springs Residential Treatment,* 132 F.3d 635, 643 (11th Cir.1998).

The elements necessary to establish a prima facie case are dictated by the employment practice at issue. Here, to prevail on his Title VII claims, Gomez must not only show membership in a protected class, which membership was a motivating factor in the employment practice applied,

he must also show that the County treated similarly situated employees outside of the protected class more favorably. *See Coutu v. Martin County Bd. of Comm'rs,* 47 F.3d 1068, 1073 (11th Cir.1995).

Proof of discriminatory motive is a crucial ingredient in actions alleging discrimination by an employer based on conduct proscribed by Title VII. *See International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 325 n. 5, 97 S.Ct. 1843, 1854 n. 5, 52 L.Ed.2d 396 (1977). When establishing unlawful motive under Title VII, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). In this case, the issue is whether the County *intentionally* discriminated against Gomez because of his national origin or out of retaliation.

To meet his initial burden of establishing a prima facie case of intentional discrimination, Gomez may rely on direct or circumstantial evidence. The type of evidence, whether direct or circumstantial, dramatically affects the allocation of evidentiary burdens. If Gomez produces competent evidence of discriminatory intent, the County must prove by a preponderance of the evidence that the same employment decision would have been reached even absent the discriminatory motive. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 258, 109 S.Ct. 1775, 1795, 104 L.Ed.2d 268 (1989); *Smith v. Horner,* 839 F.2d 1530, 1536 (11th Cir.1988). If the evidence relied upon by Gomez is circumstantial, the County's burden on rebuttal is

---

**7.** The Court has already set forth the elements necessary to establish a prima facie case of retaliation under Title VII. For claims of discrimination based on national origin, Gomez must establish that: (1) he is a member of a particular national origin; (2) he was subjected to an adverse employment action; (3) he was treated less favorably than similarly situ-

ated employees who were not members of the same national origin; and (4) he was otherwise qualified for his position. *See Coutu v. Martin County Bd. of County Comm'rs,* 47 F.3d 1068, 1073 (11th Cir.1995); *Avril v. Village South, Inc.,* 934 F.Supp. 412, 416 (S.D.Fla.1996).

to produce a legitimate, nondiscriminatory reason for the challenged employment decision. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). This burden is merely one of production, not persuasion, and is exceedingly light. *See Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094; *Tipton v. Canadian Imperial Bank of Commerce,* 872 F.2d 1491, 1495 (11th Cir. 1989).

Direct evidence is that which, if believed, proves the existence of a fact in issue without inference or presumption. *See Burrell v. Board of Trustees of the Ga. Military College,* 125 F.3d 1390, 1393–94 (11th Cir.1997); *Carter v. Three Springs Residential Treatment,* 132 F.3d 635, 643 (11th Cir.1998) (citing *Merritt v. Dillard Paper Co.,* 120 F.3d 1181, 1189 (11th Cir. 1997)). Generally, direct evidence relates to the actions, statements, or biases of the person making the challenged employment decision. *See Trotter v. Board of Trustees of the Univ. of Ala.,* 91 F.3d 1449, 1453–54 (11th Cir.1996).

If the evidence presented is, by inference, subject to more than one possible meaning, it is not direct evidence and must be considered circumstantial evidence. *Carter,* 132 F.3d at 643 (citing *Harris v. Shelby County Bd. of Educ.,* 99 F.3d 1078, 1082–83 n. 2 (11th Cir.1996)). Cases which rely upon circumstantial evidence to support allegations of discrimination are subject to the Supreme Court's burden-shifting analysis set forth in *McDonnell Douglas.* Pursuant to this

framework, if a plaintiff establishes a prima facie case of discrimination, it is incumbent upon the defendant to rebut the plaintiff's claims of discrimination by articulating a legitimate, nondiscriminatory reason for the allegedly adverse employment action—a reason worthy of credence. *Carter,* 132 F.3d at 643. However, the defendant does not have to persuade a court that it was actually motivated by the reason advanced. *Id.*

■ Gomez has not presented any direct evidence of national origin discrimination or retaliation. Furthermore, Gomez did not establish prima facie cases of these proscribed discriminatory practices.[8] However, even if the Court conceded that prima facie cases have been established, the County's articulated nondiscriminatory reasons are credible and persuasive.

■ Although the burden never shifted, the County rebutted Gomez's claims of discrimination by showing that the reasons for denying Gomez's requested promotions and transfers were his unprofessional manner of supervising and motivating his subordinates, and his inability to instill order at the Airport District GUI. The County's articulated reasons are substantially supported by the record and the PCB's Disposition Memorandum. Since the County satisfied its burden of production, to prevail upon his claims, Gomez must establish *both* that the proffered reason for the employment decision was false *and* that the real reason for the action was discrimination. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515–17, 113 S.Ct.

---

**8.** The Court has already greatly detailed the deficiencies of Gomez's retaliation claim. Although Gomez's claims of national origin discrimination have only been alluded to, they are equally deficient. Even conceding that Gomez can satisfy the first two elements of a prima facie case—that he is a member of a particular national origin and that he was subjected to an adverse employment action—there is no credible evidence to substantiate the remaining elements. First, Gomez has not shown he was treated less favorably than similarly situated employees who were non-members of his national origin. In fact, he

alleged that a Hispanic male was promoted above him to the rank of Captain. Except for Gomez's conclusory declarations, he has presented no evidence that an officer who was the subject of a PCB investigation similar to the extensive proceeding conducted pursuant to the allegations of Gomez's subordinate officers ever received more favorable treatment than Gomez. Second, in light of the findings of the PCB, Gomez has provided no competent evidence that he was "otherwise qualified" to be promoted to a higher supervisory rank.

2742, 2751–52, 125 L.Ed.2d 407 (1993); *Isenbergh v. Knight–Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 441 (11th Cir. 1996). By so persuading the Court, Gomez may satisfy his required burden of demonstrating by a preponderance of the evidence that he has been the victim of intentional discrimination. *Carter*, 132 F.3d at 643.

Gomez has attempted to discharge his burden with unsubstantiated assertions of pretext. He first proffers that the County, having relied on the PCB findings, was retaliating against him. This argument has been addressed and dismissed. Second, Gomez claimed the County's national origin discrimination was obvious because three candidates passed over Gomez and were promoted to Captain. As previously discussed, this argument has been undercut by Gomez's prior assertion that at least one of the candidates promoted to Captain was a Hispanic male who had placed behind Gomez on the eligibility list for First Lieutenant.

 Gomez's final attempt to satisfy his burden of proving pretext is his claim that "several other (non-Hispanic) officers (and/or supervisors) have been promoted ... with pending or prior sustained internal affairs investigation complaints similar to or more egregious than the subject matter relating to [Gomez]." No tangible evidence has been presented to corroborate this allegation. Rather, Gomez submitted his own affidavit in which he claims in a conclusory way that national origin had some bearing on the County's employment decisions regarding Gomez. Gomez's affidavit merely repeats the superficial allegations in the Amended Complaint. Such a proffer is insufficient to satisfy the standard of opposing evidence as contemplated by Rule 56. *See Berrigan v. Greyhound Lines, Inc.*, 782 F.2d 295, 299 (1st Cir. 1986) (noting that the duty to create a genuine issue of material fact requires more than a "skeletal set of bland allegations"). "[T]his sort of conclusory allegation, unsupported by facts, will not suffice

to overcome a well-supported Motion for Summary Judgment." *Hall v. Burger King Corp.*, 912 F.Supp. 1509, 1531 (S.D.Fla.1995) (citations omitted). "[B]ecause [the] plaintiff bears the burden of establishing pretext, he must present significant probative evidence on the issue to avoid summary judgment." *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir.1996) (citations omitted). Gomez's conclusory allegations that the County's reasons for its employment actions, "without more, are not sufficient to raise an inference of pretext or intentional discrimination." *Id.; see also Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir.1997); *Young v. General Foods Corp.*, 840 F.2d 825, 830 (11th Cir.1988).

At this juncture, Gomez was required to present sufficient evidence to support a rational finding that the County's nondiscriminatory reasons were false, and that discrimination was the more probable reason for its actions. *See St. Mary's Honor Ctr.*, 509 U.S. at 515–17, 113 S.Ct. at 2751–52. Gomez's failure to carry his rebuttal burden of presenting credible evidence of pretext, like his failure to establish a prima facie case and to exhaust his administrative remedies, is fatal to his claims of national origin discrimination and retaliation. This failure, in conjunction with the absence of record evidence to create a genuine issue of material fact, warrants summary judgment in favor of the County on Gomez's Title VII claims.

**B. Plaintiff's § 1983 Claims Against the County**

Gomez alleges that the County had an unconstitutional policy that had a discriminatory impact on members of certain national origins and officers who were subjects of internal disciplinary investigations. In particular, Gomez claims that the County intentionally disregarded its policy and custom relative to promotions and transfers as applied to Gomez, thereby abrogating his right to equal protection in violation of 42 U.S.C. § 1983. Gomez contends

that, as the highest ranking officer, Alvarez had plenary authority to make decisions which affected Gomez's opportunities and the terms and conditions of his employment. Alvarez's "policymaking" authority, according to Gomez, is sufficient to impute § 1983 liability to the County.

The County counters that Alvarez is not designated as an official with final policymaking authority. Therefore, his decisions do not constitute County "policy." Since a governmental entity cannot be held liable for violations of § 1983 solely on the theory of *respondeat superior,* Alvarez's decisions cannot expose the County to § 1983 liability.

Pursuant to its Charter, the Board of County Commissioners is the only governmental body conferred with policymaking authority. Because Alvarez's decisions are subject to review and can be overridden by the Board, the County cannot be liable under § 1983 for his decisions, even if unlawful.

The County's argument, that as an intermediate officer, Alvarez does not have "official" policymaking power, is convincing. In addition, the Court finds that Gomez failed to establish that the County implemented an unconstitutional policy or custom of discrimination and retaliation, and that the County had an intent to discriminate against Gomez.

### 1. *The Scope of § 1983 Protections*

Violations of § 1983 occur when a person suffers the deprivation of rights secured by the U.S. Constitution and federal laws inflicted by one acting "under color of any state statute, ordinance, regulation, custom, or usage of any State or Territory of the District of Columbia." 42 U.S.C. § 1983; *see also Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978). The statute was designed to provide a "broad remedy for violations of federally protected rights." *Monell v. Department of Soc. Servs. of City of N.Y.,* 436 U.S. 658, 685, 98 S.Ct. 2018, 2033, 56 L.Ed.2d 611 (1978).

■ A governmental entity is not responsible for the unauthorized actions of its lower level employees, unless the entity's final decisionmakers participated in establishing a policy or custom which directly or indirectly resulted in the constitutional violation. *See id.* at 694, 98 S.Ct. at 2037. In other words, the County may not be held liable under § 1983 on the basis of *respondeat superior. See City of St. Louis v. Praprotnik,* 485 U.S. 112, 125 n. 2, 108 S.Ct. 915, 925 n. 2, 99 L.Ed.2d 107 (1988). For Gomez to overcome summary judgment on his § 1983 claims against the County, he must establish either: (1) that the unconstitutional deprivation was the result of a decision rendered by a final policymaker; or (2) that Gomez was injured as the result of an unconstitutional policy or custom implemented or ratified by the County. *See id.* at 127, 108 S.Ct. at 926; *Brown v. City of Fort Lauderdale,* 923 F.2d 1474, 1480–81 (11th Cir.1991).

### a. *Determining the Official Policymaker for § 1983 Liability*

■ The County can only be liable under § 1983 for constitutional deprivations undertaken by persons with final policymaking authority. *See Scala v. City of Winter Park,* 116 F.3d 1396, 1399 (11th Cir.1997). Section 1983 "recovery from a municipality is limited to acts that are, properly speaking, acts of the municipality—that is, acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 478, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986). Determining whether an official possesses final policymaking authority is a question of law for the judge to decide. *See Jett v. Dallas Independent School Dist.,* 491 U.S. 701, 737, 109 S.Ct. 2702, 2724, 105 L.Ed.2d 598 (1989). In reaching this determination, the Court must adhere to the Supreme Court's admonition that "a federal court would not be justified in assuming that municipal policymaking au-

thority lies somewhere other than where the applicable law purports to put it." *Praprotnik,* 485 U.S. at 126, 108 S.Ct. at 925.

■ To impute liability on a government entity, the "official [must] possess[ ] the authority and responsibility for establishing final policy with respect to the issue in question." *Mandel v. Doe,* 888 F.2d 783, 793 (11th Cir.1989). No final policymaking authority exists where the official's decisions are subject to, or constrained by, "meaningful administrative review." *Morro v. City of Birmingham,* 117 F.3d 508, 514 (11th Cir.1997).

Gomez asserts that Alvarez, as the Director of Police Services for the MDPD, possessed final policymaking authority. This assertion is predicated on Alvarez's ability to make decisions which had impact on Gomez's employment with the County. According to Gomez, since Alvarez could decide matters relative to promotional, training, and transfer opportunities, he was a final policymaker in that area. Therefore, Alvarez's discriminatory conduct, which adversely affected Gomez's terms and conditions of employment, is sufficient to impute § 1983 liability to the County.

■ Other than Gomez's general allegations regarding Alvarez's plenary authority over personnel decisions within the MDPD, he has presented no support for his claim that Alvarez was a final policymaker. Contrary to Gomez's assertion, the evidence before the Court belies the fact that Alvarez is a policymaking official whose acts expose the County to § 1983 liability.

The record indicates that several layers of authority provide checks and balances to address grievances and unlawful behavior. In fact, Gomez had prior experience with these grievance procedures. The PCB was designed to investigate complaints of abuse and unlawful conduct committed by officers of the MDPD. Gomez has cited this unit's investigation of him as the basis for the alleged discrimination underlying his civil complaint. As Gomez pointed out, the findings of the PCB were subject to review by a Hearing Examiner appointed by the American Arbitration Association. By utilizing this procedure, Gomez was able to convince the Hearing Examiner to rescind his suspension.

On another occasion, Gomez initiated the County's grievance process in an attempt to reverse his transfer out of the Airport District. He claimed that the transfer, which was effectuated while his subordinates' discrimination claims were being investigated, violated the Collective Bargaining Agreement between the County and the Police Benevolent Association. Although one of the "steps" in the process involved an appeal to Alvarez, it was clear that any decision rendered by Alvarez was not final, but was subject to review by an arbitration panel. Prior to arbitration, but after an appeal to Alvarez, Gomez was permitted to request a hearing before a labor management committee. These instances provide ample evidence that aggrieved officers are provided an opportunity for meaningful administrative review of Alvarez's decisions.

Moreover, the County's Charter reserves the power to enact ordinances and resolutions and to promulgate rules and regulations regarding County employment to the Board of County Commissioners. *See* Miami–Dade County Charter § 1.01(A). The Board is granted authority to "[m]ake investigations of county affairs, inquire into conduct, accounts, records, and transactions of any department or office of the county." *Id.* § 1.01(a)(20).

■ Although Alvarez had some discretionary authority to make decisions involving the officers under his command, he was not a final policymaker for purposes of § 1983 municipal liability. *See Mandel,* 888 F.2d at 792. Policymaking authority is not conferred by the mere delegation of authority to a subordinate to exercise discretion. *See id.* Rather, Alvarez's deci-

sions were limited by the ordinances, resolutions, rules, and regulations passed by the Board and those officials delegated by the Board to promulgate administrative orders. *See, e.g., Lawrence v. Metro Dade County, Fla.,* 872 F.Supp. 957, 964 (S.D.Fla.1994). Since Alvarez's actions were not unrestricted and were subject to review by the Board or other sources which instituted policy having the force of law, his decisions were not "final." Thus, the County cannot be held liable under § 1983 for the decisions of Alvarez. Accordingly, Gomez's § 1983 claim against the County can survive only if he can show the existence of an unofficial custom or practice for discriminating against officers.

### b. *Determining the Existence of Unofficial Custom or Usage*

 Absent a decision by a final policymaking official, a local governmental entity may be held liable for deprivations "visited pursuant to a governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell,* 436 U.S. at 690, 98 S.Ct. at 2036. Proof of § 1983 liability based on "custom" requires the plaintiff to establish "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Brown,* 923 F.2d at 1481 (citations and quotations omitted). Such a widespread practice is "deemed authorized by policymaking officials because they must have known about it but failed to stop it." *Id.* Approval of an unconstitutional practice constitutes "policy" only when a policymaker "approve[s] a subordinate's decision *and the basis for it.*" *Praprotnik,* 485 U.S. at 127, 108 S.Ct. at 926 (emphasis added); *see also Hill v. Clifton,* 74 F.3d 1150, 1152 (11th Cir.1996) (affirming summary judgment under

§ 1983 when it was not shown that the policymaking official knew of and ratified the improper motives of his subordinates when he accepted their recommendations). Thus, to survive summary judgment on the issue of § 1983 liability, Gomez must demonstrate the existence of a custom which caused a deprivation of his federal rights, and that the custom was so widespread that the County, although aware, acquiesced in an unlawful custom. *See Young v. City of Augusta, Ga.,* 59 F.3d 1160, 1171 (11th Cir.1995).

 Gomez has not presented any evidence of a widespread custom of discrimination and retaliation within the MDPD regarding promotional and other employment opportunities which were known and ratified by the County's final policymakers. To the contrary, Gomez admits that the County did not have such a custom. In his complaint, Gomez states that the "MDPD's policies and procedures strictly prohibit a transfer resulting from discipline."[9] Amended Complaint, ¶ 26. He further pled that "passing Plaintiff Gomez over three times on the Police Captain's list [is] additional punishment *not specifically sanctioned by MDPD policy.*" *Id.* ¶ 29 (emphasis added). Gomez conceded that the basis for his § 1983 claim was not the existence of an unconstitutional policy or custom, but rather the County's *"failure to follow* its policy and custom." Gomez's Response to Motion for Summary Judgment, at 8 (emphasis added).

Moreover, Gomez has not shown the existence of an illicit custom that was so widespread as to constitute the force of law. He merely points to five incidents which occurred over a three-year period. Such isolated and dispersed episodes, even if they were predicated on discrimination, are insufficient to substantiate the existence of a widespread custom violative of § 1983. *See, e.g., Gomez v. Metro Dade County, Fla.,* 801 F.Supp. 674, 680

---

9. This allegation was contained within Gomez's "count" for involuntary and retaliatory transfer.

(S.D.Fla.1992); *Prieto v. Metropolitan Dade County*, 718 F.Supp. 934, 938–39 (S.D.Fla.1989) (four isolated incidents over two years involving only the plaintiff does not establish the existence of a custom under § 1983). Thus, Gomez has presented nothing probative to convince a reasonable jury that the County had a policy of discriminating against Gomez or that discrimination was the motivating factor in denying Gomez promotions, as well as other employment opportunities.

### 2. *Proving Discrimination Under § 1983*

Since no substantive rights are conferred pursuant to § 1983, a plaintiff seeking relief under the statute must bring a § 1983 claim in conjunction with some other statute or constitutional provision that provides substantive rights. *See Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617, 99 S.Ct. 1905, 1916, 60 L.Ed.2d 508 (1979) ("one cannot go into court and claim a violation of section 1983—for section 1983 by itself does not protect anyone against anything."); *see also Arrington v. Cobb County*, 139 F.3d 865, 872 (11th Cir.1998); *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir.1989) ("An underlying constitutional right must exist before a § 1983 action will lie."). The underlying basis for Gomez's § 1983 claim is unlawful employment discrimination, which, like a Title VII claim, requires proof of an intent to discriminate. *See Cross v. State of Alabama*, 49 F.3d 1490, 1507 (11th Cir.1995) (citations omitted).

The test and evidentiary burdens for establishing intentional discrimination under § 1983 are the same as those used in Title VII cases. *See Arrington*, 139 F.3d at 873 n. 16. Therefore, applying the *McDonnell Douglas* burden-shifting analysis, Gomez must initially establish a prima facie case of discrimination before the County is burdened to come forward with a legitimate nondiscriminatory reason for its actions. As with Title VII's evidentiary burdens, Gomez must ultimately prove that the County's proffered reasons were merely a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1817.

As the Court has already determined, the evidence falls far short of establishing that the County's decisions were discriminatory and caused any deprivation of Gomez's constitutional rights. Therefore, for the reasons set forth with respect to Gomez's claims of national origin discrimination and retaliation in violation of Title VII, summary judgment on his parallel claims under § 1983 is correspondingly appropriate.

### IV. Conclusion

Although factual disputes preclude summary judgment, the "mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the party seeking summary judgment." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980). When a party's response consists of nothing more than a repetition of the conclusory allegations in the complaint, summary judgment is not only proper, but required. *See Barfield*, 883 F.2d at 934.

The functions of the Court and jury do not differ where there is, at the outset, a question whether the conduct alleged is so legally innocuous as to present no issue for a jury. Gomez has not proffered sufficient evidence to rebut the County's showing of the absence of any genuine issues of material fact. By failing to satisfy the elemental proof necessary to indicate actionable conduct, Gomez has failed to establish prima facie cases of national origin discrimination and retaliation.

Because Gomez did not meet his burden of establishing a prima facie case of discrimination, the Court was not required to examine the County's reasons for its employment decisions nor determine whether those reasons were pretextual. Nevertheless, the Court finds the

County's articulated reasons constitute a legitimate, nondiscriminatory explanation for not promoting Gomez.

Moreover, Gomez did not present even a scintilla of evidence that Alvarez was a final policymaking official and that his actions could expose the County to liability under § 1983. Nor was evidence of a widespread custom of basing employment decisions at the MDPD on discriminatory criteria presented for consideration.

Merely opposing the County's proffer with unsubstantiated allegations of discrimination, as recited in his pleadings is a legally insufficient approach to controvert the County's legitimate proof that no discrimination occurred and that no genuine issues of material fact exist. Having failed to meet his legal burden of demonstrating that he was the victim of discrimination and retaliation in violation of Title VII and § 1983, Gomez has not created a triable issue. Thus, Gomez cannot avoid judgment as a matter of law on his claims. Accordingly, the County's Motion for Summary Judgment on the Claims of Ricardo Gomez is granted.