**Alexis ROSARIO, as guardian of Juan Carlos Rosario, Maribel Calzado as guardian of and on behalf of Rachel Rosario, a minor, and Piedad Vergara as guardian of, and on behalf of Carolina Rosario, a minor, Plaintiffs,**

v.

**MIAMI–DADE COUNTY d/b/a Miami–Dade County Corrections and the Public Health Trust of Miami–Dade County d/b/a Jackson Health System d/b/a Miami–Dade County Corrections Health Services Defendants.**

No. 06–23020–CIV.

United States District Court, S.D. Florida.

May 8, 2007.

Richard Bodin Sharp, Sharp, Diamond, PA, Coral Gables, FL, for Plaintiffs.

Oren Rosenthal, Rachel M. Wilhelm, Dade County Attorney's Office, Miami, FL, Paul Henry Field, Scott Edward Solomon, Falk Waas Hernandez Cortina Solomon & Bonner, Coral Gables, FL, for Defendants.

### ORDER ON DEFENDANTS' SEPARATELY FILED MOTIONS TO DISMISS

UNGARO, District Judge.

THIS CAUSE is before the Court upon Defendant Miami–Dade County's Motion to Dismiss Second Amended Complaint, filed March 6, 2007. (D.E.22.) Plaintiff filed its Response on March 16, 2007.

(D.E.24) Defendant Miami–Dade County filed its Reply on March 26, 2007. (D.E.29.) Also before the Court is the Motion to Dismiss filed on March 20, 2007, by Defendant Public Health Trust of Miami–Dade County d/b/a Jackson Memorial Hospital ("Public Health Trust").[1] (D.E.25.) Plaintiff filed its Response on April 3, 2007. (D.E.31.) Defendant Public Health Trust filed its Reply on April 10, 2007. (D.E.31.) The matters are ripe for disposition.

THE COURT has considered the motions and the pertinent portions of the record and is otherwise fully advised in the premises.

By way of Background, Plaintiffs[2] have brought three claims against Miami–Dade County, alleging liability under 42 U.S.C. § 1983 (Count 1), negligence (Count II), and spoliation of evidence (Count V). Plaintiffs also have brought three claims against Public Health Trust alleging liability under 42 U.S.C. § 1983 (Count III), medical malpractice under sections 766.101 *et seq.* of the Florida Statutes (Count IV), and spoliation of evidence (Count VI). In its motion, Miami–Dade County seeks dismissal of Counts I and V of Plaintiffs' second amended complaint. (Def. Miami–Dade County's Mot. to Dismiss ("County MTD") at 1.) Public Health Trust seeks dismissal of Counts III, IV, and VI of Plaintiffs' second amended complaint.[3] (Def. Public Health Trust's Mot. to Dismiss ("Trust MTD") at 3.)

## FACTS

The Court recites the following facts taken from Plaintiffs' second amended complaint and accepted as true for the purpose of deciding Defendants' separately filed motions to dismiss. Plaintiffs allege that on August 18, 2004, Juan Carlos Rosario ("Rosario") began serving a thirty-day sentence for probation violations after he received a suspended sentence for driving under the influence of alcohol with his child in the vehicle. (2d Am.Compl.¶ 13.) According to Plaintiffs, Rosario was intoxicated when he arrived at the Dade County Pre–Trial Detention Center ("Detention Center") to begin his thirty day suspended sentence. (2d Am.Compl.¶ 14.) On August 20, 2004, Rosario was assessed by the staff of the Detention Center's medical clinic. (2d Am.Compl.¶ 15.) Plaintiffs allege that the clinic "was and is manned by Miami–Dade County and/or Public Health Trust employees." (2d Am.Compl.¶ 15.) The as-

---

1. The Public Health Trust of Miami–Dade County, Florida was created and established "by authority of Chapter 73–102, Laws of Florida 1973, as an agency and instrumentality of Miami–Dade County." Miami–Dade County Code § 25A–1. The Public Health Trust is "a public body corporate and politic which, through its governing body, may exercise all those powers either specifically granted [within the Miami–Dade County Code] or necessary in the exercise of those [enumerated] powers." Miami–Dade County Code § 25A–1. The Public Health Trust has the power to sue and be sued. Miami–Dade County Code § 25A–4.

2. Plaintiffs are Alexis Rosario, as guardian of Juan Carlos Rosario, Maribel Calzado, as guardian and on behalf of Rachel Rosario, and Piedad Vergara, as guardian and on behalf of Carolina Rosario.

3. In its motion to dismiss, Public Health Trust states that it seeks to dismiss Plaintiffs' claims against it for: "(1) a violation under 42 U.S.C. § 1983 (Count IV); (2) medical malpractice (Count V); and (3) spoliation of evidence (Count VI)." (Trust MTD at 3.) The Court notes that these three claims appear in Counts III, IV, and VI of Plaintiffs' second amended complaint and, accordingly, will construe Public Health Trusts's motion as seeking dismissal of Counts III, IV, and VI.

sessment made no indication of the fact that Rosario was a "chronic alcoholic or that he was intoxicated at the time of his incarceration two days before." (2d Am. Compl.¶ 15.) Plaintiffs further assert that "Miami–Dade County and/or Public Health Trust employees made no mention of the fact that [Rosario] was experiencing delirium tremors ... from lack of alcohol." (2d Am.Compl.¶ 15.)

At approximately 7:30 p.m. on August 20, 2004, Rosario "was violently shaking and experiencing tremors" and as a result he was readmitted to the Detention Center's medical clinic. (2d Am.Compl.¶ 16.) Detention Center records state that Rosario stayed at the clinic for four hours. (2d Am.Compl.¶ 16.) Plaintiffs allege that Rosario was sent back to his cell at 11:30 p.m. despite the fact that he was experiencing delirium tremors. (2d Am. Compl.¶ 16.) According to Plaintiff, the Detention Center clinic's records from 7:30 p.m. to 11:30 p.m. on August 20, 2004 were either lost or destroyed by Detention Center staff.[4] (2d Am.Compl.¶ 16.) According to Plaintiff, instead of transferring Rosario to the hospital or keeping him in the Detention Center's clinic for further observation, "Miami–Dade County and/or Public Health Trust representative/final policy maker showed deliberate indifference to [Rosario's] serious medical needs by returning him to his cell." (2d Am. Compl.¶ 19.) During the early morning on August 21, 2004, Rosario suffered grand mal seizures due to the delirium tremors,

resulting in a brain hemorrhage that has left Rosario in a permanent vegetative state. (2d Am.Compl.¶ 20.)

Plaintiff alleges that the Miami–Dade County and/or Public Health Trust representative who determined that Rosario should be transferred back to his cell instead of to a hospital had final policymaking authority regarding Rosario's medical needs, and that his decision was not subject to administrative review. (2d Am. Compl.¶ 21, 31.) Plaintiff further alleges that the Miami–Dade County and/or Public Health Trust representative was aware that Rosario was experiencing delirium tremors and in need of immediate hospitalization when making the decision to transfer Rosario back to his cell, and that given Rosario's obvious need for medical attention, the decision to send Rosario back to his cell was unjustifiable, amounted to a total failure to provide medical care, and constituted deliberate indifference to Rosario's serious medical needs. (2d Am. Compl.¶¶ 22–23, 31–32.) Plaintiffs allege that if the Miami–Dade County and/or Public Health Trust representative "used even the slightest care with regard to [Rosario's] medical condition on August 20, 2004, [he] would not be in a permanently vegetative state." (2d Am.Compl.¶¶ 25.) Plaintiffs allege that the Miami–Dade County and/or Public Health Trust representative "did in fact have final policy making authority and was not subject to meaningful review with regards to [Rosario's] medical care was and his reckless acts and

---

4. Plaintiffs allege that they have requested the records on multiple occasions, and the records have never been produced by either the Detention Center or the clinic. (2d Am. Compl.¶ 16.) According to Plaintiffs, the "missing records detailed the fact that [Rosario] was experiencing delirium tremors and or mild seizures while during [sic] the clinic

admission." (2d Am.Compl.¶ 17.) Plaintiff alleges that the records were "deliberately destroyed by Miami–Dade County and/or Public Health Trust in an effort to hide the Defendant's deliberate indifference towards [Rosario's] serious medical needs." (2d Am. Compl.¶ 17.)

omissions with regards to [Rosario's] 'care constituted the customs, policies, and practices' of Miami–Dade County and Public Health Trust." (2d Am.Compl.¶¶ 34, 52.)

### LEGAL STANDARD

On a motion to dismiss, "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir.1984). Under the Federal Rules of Civil Procedure, a claimant does not need to "set out in detail the facts upon which he bases his claim." *Gibson*, 355 U.S. at 47, 78 S.Ct. 99. Rather, "all the Rules require is a 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.; see* Fed.R.Civ.P. 8. In ruling on a motion to dismiss, the court may not look beyond the four corners of the complaint. *Milburn*, 734 F.2d at 765 ("Consideration of matters beyond the complaint is improper in the context of a motion to dismiss but proper in the context of a motion for summary judgment."). However, where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and if a defendant attaches such documents to the motion to dismiss, the court may consider them without converting the motion into one for summary judgment. *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir.1997). On a motion to dismiss, "the facts stated in [plaintiff's] complaint and all reasonable inferences therefrom are taken as true." *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir.1990); *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 171, 125 S.Ct. 1497, 161 L.Ed.2d 361 (2005). The Eleventh Circuit has stated that "the threshold of sufficiency to which a complaint is held at the motion-to-dismiss stage is 'exceedingly low.'" *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 880 (11th Cir.2003).

### ANALYSIS

*Counts I & III: Claims for Liability Under § 1983 Should be Dismissed*

 Section 1983 is violated where a United States citizen or other person within the jurisdiction of the United States is deprived of his or her rights, privileges, or immunities under the Constitution and laws of the United States by any person who acts "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia."[5] 42 U.S.C. § 1983. Municipalities and other local government entities

---

5. Title 42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution

and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

are subject to liability under § 1983, and may be "sued directly for money, declaratory, or injunctive relief where ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A municipality or other local government entity "cannot be held liable *solely* because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691, 98 S.Ct. 2018; *see also Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 400, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (recognizing that, "in enacting § 1983, Congress did not intend to impose liability on a municipality unless *deliberate* action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights") (citing *Monell*, 436 U.S. at 694, 98 S.Ct. 2018); *Buzzi v. Gomez*, 62 F.Supp.2d 1344, 1358 (S.D.Fla. 1999) ("A governmental entity is not responsible for the unauthorized actions of its lower level employees, unless the entity's final decisionmakers participated in establishing a policy or custom which directly or indirectly resulted in the constitutional violation.") (citing *Monell*, 436 U.S. at 694, 98 S.Ct. 2018; *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)).

■ To establish liability against Miami–Dade County or the Public Health Trust under § 1983, Plaintiffs must be able to show "either: (1) the unconstitutional deprivation was the result of a decision rendered by a final policymaker; or (2) that [Rosario] was injured as a result of an unconstitutional policy or custom implemented or ratified by the County" or the Public Health Trust. *Buzzi*, 62 F.Supp.2d at 1358 (citing *Praprotnik*, 485 U.S. at 127, 108 S.Ct. 915; *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1480–81 (11th Cir.1991)); *see also Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003) (stating that a plaintiff may establish a municipality's policy either by "(1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county") (citing *Monell*, 436 U.S. at 690–91, 98 S.Ct. 2018; *Brown v. Neumann*, 188 F.3d 1289, 1290 (11th Cir.1999) (citing *Praprotnik*, 485 U.S. at 121, 108 S.Ct. 915)). Under either theory of liability, "a plaintiff (1) must show that the local government entity ... has authority and responsibility over the governmental function in issue and (2) must identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused the particular constitutional violation in issue." *Grech*, 335 F.3d at 1330 (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *Hill v. Clifton*, 74 F.3d 1150, 1152 (11th Cir.1996) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986))).

Defendants argue that Plaintiffs' § 1983 claims must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted because according to Defendants, Plaintiffs have failed to allege that the deprivation of Rosario's constitutional rights was the result of a deliberate action attributable to the County or the Public Health Trust. (County MTD at 2–4; Trust MTD at 6–11.) Defendants argue that Plaintiffs'

§ 1983 claims fail because they are based upon a *respondeat superior* theory, amounting to nothing more than an allegation that the County and the Public Health Trust are liable under § 1983 for the acts of their employee or employees. (County MTD at 2–4; Trust MTD at 6–11.) Plaintiffs argue in response that they have adequately stated a claim for municipal liability under § 1983 by alleging (1) that the Miami–Dade County and/or Public Health Trust representative who determined that Rosario should be transferred back to his cell instead of to a hospital had final policymaking authority regarding Rosario's medical needs, and that his decision was not subject to administrative review; and (2) that the representative's failure to provide Rosario with medical care constituted a custom and policy at the Detention Center. (Resp. to County MTD at 3–6; Resp. to Trust MTD at 5–7.)

 The Court must determine whether Plaintiffs have stated a claim upon which relief may be granted by alleging facts capable of supporting a finding either that the unconstitutional deprivation was the result of a decision rendered by a final policymaker for Miami–Dade County or the Public Health Trust, or that Rosario was injured as a result of an unconstitutional policy or custom implemented or ratified by the County or the Public Health Trust. *Buzzi,* 62 F.Supp.2d at 1358. Heightened pleading requirements are not applicable in cases alleging municipal liability under § 1983. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *see also Swann v. S. Health Partners,* 388 F.3d 834 (11th Cir.2004). In the absence of a heightened pleading standard, all the Federal Rules require is " 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman,* 507 U.S. at 168, 113 S.Ct. 1160 (quoting *Conley,* 355 U.S. at 47, 78 S.Ct. 99). However, "[a]s a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss." *S. Florida Water Mgmt. Dist. v. Montalvo,* 84 F.3d 402, 409 n. 10 (11th Cir.1996) (citing *Assoc. Builders, Inc. v. Alabama Power Co.,* 505 F.2d 97, 100 (5th Cir.1974)); *see also Perez v. Metro. Dade County,* 2006 WL 4056997, *1 (S.D.Fla.Apr.28, 2006).

### 1. Final Policymaking Authority

 To establish "liability under the final policymaker theory of municipal liability, 'the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in *that area* of the city's business.' " *Gomez v. Metro Dade County, Florida,* 801 F.Supp. 674, 677 (S.D.Fla.1992) (quoting *Praprotnik,* 485 U.S. at 123, 108 S.Ct. 915). Determining whether a County employee has final policymaking authority is a question of law for the judge to decide. *Jett,* 491 U.S. at 737, 109 S.Ct. 2702 (quoting *Praprotnik,* 485 U.S. at 124 n. 1, 108 S.Ct. 915); *see also Buzzi,* 62 F.Supp.2d at 1358 (citing *Jett,* 491 U.S. at 737, 109 S.Ct. 2702). The trial judge "must identify those officials or governmental bodies who speak with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional statutory violation at issue." *Gomez,* 801 F.Supp. at 678 (quoting *Jett,* 491 U.S. at 736, 109 S.Ct. 2702). In "making this determination, the court should examine not only the relevant positive law, including ordinances, rules and

regulations, but also the relevant customs and practices having the force of law." *Mandel v. Doe*, 888 F.2d 783, 793 (11th Cir.1989) (citations omitted). The court must "also ensure that the municipal official possess the authority and responsibility for establishing *final* policy with respect to the issue in question." *Id.* In other words, "[n]o final policymaking authority exists where the official's decisions are subject to, or constrained by 'meaningful administrative review.'" *Buzzi*, 62 F.Supp.2d at 1359 (citing *Morro v. City of Birmingham*, 117 F.3d 508, 514 (11th Cir. 1997)).

Plaintiffs have failed to allege facts capable of supporting a finding that the unconstitutional deprivation was the result of a decision rendered by a final policymaker for Miami–Dade County or the Public Health Trust. Plaintiffs allege that the Miami–Dade County and/or Public Health Trust representative who determined that Rosario should be transferred back to his cell instead of to a hospital had final policymaking authority regarding Rosario's medical needs, and that his decision was not subject to administrative review. However, this Court has repeatedly recognized that "final policymaking authority for Miami–Dade County rests with the Board of County Commissioners or the City Manager." *Wilson v. Miami–Dade County*, 2005 WL 3597737, \*8 (S.D.Fla. Sept.19, 2005); *Buzzi*, 62 F.Supp.2d at 1359–60; *Jones v. Miami–Dade County*, 2005 WL 2456884, \*6 (S.D.Fla. Apr.7, 2005); *Hershell Gill Consulting Eng'rs v. Miami–Dade County*, 333 F.Supp.2d 1305, 1333–34 (S.D.Fla.2004).

For example, in *Wilson v. Miami–Dade County*, the court dismissed the plaintiff's § 1983 claim against the County on grounds that the plaintiff failed to allege facts that could support § 1983 liability. 2005 WL 3597737 at \*8. The *Wilson* plaintiff alleged that the County, through the Police Department Director as the County's alleged final policymaker, was deliberately indifferent to the plaintiff's constitutional right to be protected from being murdered by a Miami–Dade police officer. *Id.* at \*4. The *Wilson* court recognized that the Southern District has "on multiple occasions recognized that the final policymaking authority for Miami–Dade County rests solely with the Board of County Commissioners or the County Manager." *Id.* at \*8. The *Wilson* court relied on the Southern District's finding in *Buzzi v. Gomez*, that for purposes of § 1983 liability, the Director of the Police Department was not the final policymaker for Miami–Dade County. *Id.* The *Wilson* court cited the *Buzzi* court's explanation that "[p]olicymaking authority is not conferred by the mere delegation of authority to a subordinate to exercise discretion." *Id.* Where the Director's decisions "were limited by the ordinances, resolutions, rules, and regulations passed by the Board and those officials delegated by the Board to promulgate administrative orders," and the Director's actions "were not unrestricted and were subject to review by the Board or other sources which instituted policy having the force of law, his decisions were not 'final,'" and the County could not be held liable under § 1983. *Id.* Thus, the *Wilson* court dismissed the § 1983 claim against the County even despite the plaintiff's allegation that the Police Department Director was the County's final policymaker. *Id.* at \*9.

Moreover, the Miami–Dade County Home Rule Charter provides that the Board of County Commissioners is the "legislative and the governing body of the county," and has the power to "[p]rovide

... jails, and related facilities." Miami–Dade County Home Rule Charter, Art. 1, § 1.01.A.4 (as amended through Mar. 9, 2004). The Board of County Commissioners has the power to "[s]et reasonable minimum standards for all governmental units in the county for the performance of any service or function." Miami–Dade County Home Rule Charter, Art. 1, § 1.01.A.18 (as amended through Mar. 9, 2004). The Board also may "[a]dopt such ordinances and resolutions as may be required in the exercise of its powers, and prescribe fines and penalties for the violation of ordinances." Miami–Dade County Home Rule Charter, Art. 1, § 1.01.A.22 (as amended through Mar. 9, 2004).

The Public Health Trust, which was created and established by County Ordinance, is an agency and instrumentality of Miami–Dade County. Miami–Dade County Code § 25A–1. It is "a public body corporate and politic which, through its governing body, may exercise all those powers either specifically granted [within the Miami–Dade County Code] or necessary in the exercise of those [enumerated] powers." Miami–Dade County Code § 25A–1. The Public Health Trust is "responsible for the operation, maintenance and governance of ... Jackson Memorial Hospital," and any other additional facility designated by the Board of County Commissioners. Miami–Dade County Code § 25A–2(a) & (b). The Public Health Trust is required to "annually develop and recommend to the County Commission policies for the admission of hospital patients, the determination of the indigent status of patients and health care delivery in the designated facilities of the Trust, including primary, secondary, and tertiary health care." Miami–Dade County Code § 25A–4(b)(1). The Trust must "formally present its annual recommendations for health care delivery in its desig-

nated facilities at an annual, joint meeting to be called by the Chairperson of the Board of County Commissioners," and it must "comply with the health care policies established by the Board of County Commissioners." Miami–Dade County Code § 25A–4(b)(3)–(4).

Thus, the Court finds that, pursuant to the Miami–Dade County Home Rule Charter and the Miami–Dade County Code, Plaintiffs' conclusory allegations-that the Miami–Dade County and/or Public Health Trust representative who determined that Rosario should be transferred back to his cell instead of to a hospital had final policymaking authority regarding Rosario's medical needs, and that his decision was not subject to administrative review-are not sufficient to state a claim for which relief may be granted under § 1983 against either Miami–Dade County or the Public Health Trust. The Board of County Commissioners is the lawmaking and policymaking body of Miami–Dade County, and the Board of County Commissioners establishes the health care policies with which the Public Health Trust must comply. Under the Miami–Dade County Home Rule Charter and the Miami–Dade County Code, any decision by a Miami–Dade County and/or Public Health Trust representative who may have had discretion with respect to decisions concerning the provision of medical care to inmates at the Dade County Pre–Trial Detention Center would necessarily be subject to administrative review by the Board of County Commissioners.

Plaintiffs cite *Kimbrough v. City of Cocoa*, 2007 WL 113996 (M.D.Fla. Jan.10, 2007) in support of their position that they have stated a claim upon which relief may be granted against the County and the Public Health Trust by alleging that an

unidentified Miami–Dade County and/or Public Health Trust representative who determined that Rosario should be transferred back to his cell instead of to a hospital had final policymaking authority regarding Rosario's medical needs, and that his decision was not subject to administrative review. The *Kimbrough* case involved a § 1983 claim against the Sheriff of Brevard County. *Id.* at *1. The claim arose out of the inadequate medical care an inmate received while he was incarcerated at the Brevard County Detention Center ("BDC"). *Id.* Prison Health Services, Inc., ("PHS") a private company, was under contract with the Brevard County Sheriff to provide medical services to inmates incarcerated at the BDC. *Id.* The Medical Director at the BDC was employed by PHS. The *Kimbrough* court found that the Brevard County Sheriff delegated his decisions at the prison to PHS and its employees, and that the Medical Director for the BDC had final policymaking authority over medical decisions at BDC. *Id.* at *3. In contrast to this case, where, pursuant to the Miami–Dade County Home Rule Charter and the Miami–Dade County Code, any decision by a Miami–Dade County and/or Public Health Trust representative who may have had discretion with respect to decisions concerning the provision of medical care to inmates at the Dade County Pre–Trial Detention Center would necessarily be subject to administrative review by the Board of County Commissioners, in *Kimbrough*, final policymaking authority had been delegated to the BDC Medical Director by the Brevard County Sheriff, and the Medical Director's medical decisions were not subject to any sort of meaningful review. *Id. Kimbrough* is therefore distinguishable from this action, and does not provide support for Plaintiffs' contention that they have alleged facts sufficient to state a claim for § 1983 liability against Miami–Dade County or the Public Health Trust under a "final policymaker" theory. Accepting the facts as pled in Plaintiffs' second amended complaint as true, the Court finds, for the foregoing reasons, that Plaintiffs have failed to allege facts capable of supporting a finding that the unconstitutional deprivation was the result of a decision rendered by a final policymaker for Miami–Dade County or the Public Health Trust.

### 2. "Custom or Usage"

To establish liability under a "custom or usage" theory of municipal liability, the plaintiff must "prove a long-standing and widespread practice that is deemed authorized by policymaking officials because they must have known about it and failed to stop it." *Gomez*, 801 F.Supp. at 679 (citing *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991)). The Eleventh Circuit defines custom as "a practice that is so settled and permanent that it takes on the force of the law." *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir.2004) (quoting *Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir. 1999)). "Random acts or isolated incidents are usually insufficient to establish a custom or policy." *Gomez*, 801 F.Supp. at 679 (citing *Depew v. City of St. Mary's, Georgia*, 787 F.2d 1496, 1499 (11th Cir.1986)). To establish a policy or custom, it is "generally necessary to show a persistent and wide-spread practice." *McDowell*, 392 F.3d at 1290 (quoting *Wayne*, 197 F.3d at 1105). For the county or local government entity to be liable, "the custom or policy must be the moving force of the constitutional violation at issue." *Gomez*, 801 F.Supp. at 679 (citing *Samples on Behalf of Samples v. City of Atlanta*, 846 F.2d

1328, 1333 (11th Cir.1988)). To survive the motions to dismiss filed by Miami–Dade County and the Public Health Trust, Plaintiffs must have alleged facts capable of supporting their § 1983 claims against Miami–Dade County and the Public Health Trust on grounds that it was either of the entities' policy to deprive inmates of the necessary medical care, and that this practice resulted in Rosario's injuries.

 Plaintiffs have not alleged the existence of a custom which caused a deprivation of Rosario's constitutional rights. Plaintiffs allege that the unidentified County or Public Health Trust representative's "reckless acts and omissions" with regards to [Rosario's] care constituted "the customs, policies, and practices" of Miami–Dade County and the Public Health Trust. (2d Am.Compl.¶ 34, 36, 52, 54.) However, "the simple mention of 'policy and/or custom' is not enough, for 'a plaintiff must do something more than simply allege that such an official policy exists.'" *Perez*, 2006 WL 4056997 at * 2 (quoting *Riebsame v. Prince*, 267 F.Supp.2d 1225, 1233 (citing *Pembaur*, 475 U.S. at 480, 106 S.Ct. 1292; *Villanueva v. City of Ft. Pierce*, 24 F.Supp.2d 1364, 1368 (S.D.Fla.1998))). The plaintiff must "allege that the policy or course of action was 'consciously chosen' or 'officially sanctioned or ordered.'" *Id.* (quoting *Riebsame*, 267 F.Supp.2d at 1233). For example, in *Hall v. Smith*, 2005 WL 1871144 (M.D.Fla. July 27, 2005), the court dismissed the plaintiff's § 1983 claim against the City of Jacksonville for failure to state a claim where the plaintiff "failed to allege any facts to evidence a City custom, policy or practice which caused him to be deprived of a constitutional right." *Id.* at *4. The *Hall* court found that the plaintiff had "not provided the [c]ourt with sufficient information to

identify exactly what the actual policy or custom [was] that supposedly caused his injuries." *Id.* In *Cannon v. Macon County*, 1 F.3d 1558 (11th Cir.1993), the court found the district court had properly granted the County's motion to dismiss the plaintiff's § 1983 claim where the plaintiff failed "to allege any facts whatsoever to indicate that the alleged violation was a result of a County policy or practice that would give rise to County liability." *Id.* at 1565.

 In this action, Plaintiffs have likewise failed to allege any facts in support of their claim that the unidentified County or Public Health Trust representative's allegedly reckless acts and omissions with respect to Rosario's care constituted "the customs, policies, and practices" of Miami–Dade County and the Public Health Trust. Plaintiffs allege that Rosario was deprived of adequate medical care, but they have not alleged any facts capable of supporting a finding that the County's and/or the Public Health Trust's actions or omissions with regard to Rosario's medical care were part of a widespread practice rather than an isolated event. Accordingly, the Court finds that dismissal of Plaintiffs' § 1983 claims against Miami–Dade County and the Public Health Trust is appropriate.

### *Plaintiffs' Valcin Argument is Without Merit*

In the second amended complaint, Plaintiffs bring claims for spoliation of evidence against Miami–Dade County in Count V and against Public Health Trust in Count VI. Specifically, Plaintiffs allege that the failure of Miami–Dade County and/or the Public Health Trust to preserve the medical records relating to Rosario's admission to the Detention Center's clinic from 7:30 p.m. to 11:30 p.m. on August 20, 2004 has

impaired Plaintiff's ability to prove their prima facie case against Miami–Dade County and the Public Health Trust. (2d Am.Compl.¶¶ 74, 82.) "It is Plaintiffs' position that the missing admission records hold the facts that are the basis for the claims of deliberate indifference that are being made against [Miami–Dade County and/or Public Health Trust's] final decision maker responsible for [Rosario's] care and treatment from 7:30 p.m. [to] 11:30 p.m. on August 20, 2004." (2d Am.Compl.¶¶ 74, 82.)

■ In response to the motions to dismiss filed by Miami–Dade County and the Public Health Trust, Plaintiffs concede that there is no independent action for first-party spoliation of evidence under Florida law. *Martino v. Wal–Mart Stores, Inc.,* 908 So.2d 342, 345 (Fla.2005). Plaintiffs accordingly withdraw their claims for spoliation of evidence alleged in Counts V & VI. (Resp. to County MTD at 3; Resp. to Trust MTD at 4.) However, Plaintiffs argue that the presumption articulated by the Florida Supreme Court in *Public Health Trust v. Valcin,* 507 So.2d 596 (Fla. 1987) is applicable, and Plaintiffs ask the Court "to shift the burden of proof in this matter from the Plaintiff to the Defendant and provide lenience with regard to the heightened pleading generally required by the courts when pleading a 1983 action." (Resp. to County MTD at 3; Resp. to Trust MTD at 4.) The Court finds that Plaintiffs' *Valcin* argument is without merit. First, there is no heightened pleading requirement in cases alleging municipal liability under § 1983. *Leatherman,* 507 U.S. at 168, 113 S.Ct. 1160. Second, *Valcin* is inapplicable in this case, and does not provide grounds for providing lenience in determining whether Plaintiffs have satisfied the pleading requirements in alleging § 1983 liability against Miami–Dade County and the Public Health Trust.

The *Valcin* case involved a medical malpractice action filed in state court against the Public Health Trust. 507 So.2d at 597. The *Valcin* plaintiff sued the Public Health Trust for negligence in performing a surgery. *Id.* The Third District Court of Appeal found that "the lack of an 'operative report' by the surgeon in [the plaintiff's] file impaired the expert's ability to determine whether the operation had been performed with due care." *Id.* The Third District created presumptions that would enable the plaintiff to maintain a negligence action against the hospital despite the lack of essential evidence. On appeal, the Florida Supreme Court adopted a more narrow version of the Third District's presumptions. The *Valcin* court held that "when evidence was intentionally lost, misplaced, or destroyed by one party, trial courts were to rely on sanctions found in Florida Rule of Civil Procedure 1.380(b)(2) and that 'a jury could well infer from such a finding that the records would have contained indications of negligence.'" *Martino,* 908 So.2d at 346 (quoting *Valcin,* 507 So.2d at 599). "If the loss of the evidence was determined to be negligent ... [a] rebuttable presumption of negligence for the underlying tort applied." *Id.* (citing *Valcin,* 507 So.2d at 599). The *Valcin* court clarified that "the presumption only applied when 'the absence of the records hinders [the plaintiff's] ability to establish a prima facie case.'" *Id.* (quoting *Valcin,* 507 So.2d at 599). The rebuttable presumption shifts the burden of proof under the Florida Statutes "so that the presumption 'is not overcome until the trier of fact believes that the presumed [negligence] has been overcome by whatever degree of persuasion is required by the substantive law of the case.'" *Id.* (quoting *Valcin,* 507 So.2d at 600–01).

The Court agrees with Defendants that the *Valcin* case is inapplicable with respect

to this Court's determination of whether Plaintiffs have satisfied the pleading requirements in alleging § 1983 liability against Miami–Dade County and the Public Health Trust. *Valcin* involved a claim for medical malpractice filed in state court, whereas this Court's determination concerns whether Plaintiffs have sufficiently stated a claim for § 1983 liability against Miami–Dade County and the Public Health Trust. The *Valcin* presumption shifts the burden of proof under the Florida Statutes with respect to proving negligence, whereas this Court's determination of whether Plaintiffs have satisfied the pleading requirements in alleging municipal liability under § 1983 does not involve burdens of proof under Florida law. Accordingly, for the foregoing reasons, the Court concludes that the *Valcin* case is inapplicable with respect to this Court's determination of whether Plaintiffs have satisfied the pleading requirements in alleging § 1983 liability against Miami–Dade County and the Public Health Trust.

*Plaintiffs' Pendant State–Law Claims Should be Dismissed Without Prejudice*

*Counts V & VI: Claims for Spoliation of Evidence under Florida Common Law*

*Count IV: Claim for Medical Malpractice under the Florida Statutes*

 Because the Court finds that dismissal of Plaintiffs' § 1983 claims against Miami–Dade County and the Public Health Trust is appropriate, there are no remaining claims arising under federal law. The Supreme Court has recognized that "a federal court's determination of state-law claims could conflict with the principle of comity to the States and with the promotion of justice between the litigating parties." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (citing *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). "[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendant state-law claims." *Id.* When, for example, "the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Id.* (citing *Gibbs,* 383 U.S. at 726, 86 S.Ct. 1130). Accordingly, the Court dismisses Plaintiffs' remaining state law claims without prejudice.[6] Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendants' separately filed Motions to Dismiss are GRANTED in accordance with this Order. Plaintiff's claims for liability under § 1983 against Miami–Dade County and the Public Health Trust are DISMISSED WITH PREJUDICE. Plaintiffs' remaining state-law claims are DISMISSED WITHOUT PREJUDICE.

---

6. The Court notes that in response to the motions to dismiss filed by Miami–Dade County and the Public Health Trust, Plaintiffs concede that there is no independent action for first-party spoliation of evidence under Florida law, *see Martino v. Wal–Mart Stores,* *Inc.,* 908 So.2d 342, 345 (Fla.2005), and that accordingly they withdraw their claims for spoliation of evidence alleged in Counts V & VI. (Resp. to County MTD at 3; Resp. to Trust MTD at 4.)